UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 16-65093- BEM |
| | ) | |
| PAULA VAN SICKLE, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |

**APPLICATION TO EMPLOY REAL ESTATE AGENT
UNDER LISTING AGREEMENT**

COMES NOW S. Gregory Hays, Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate (the "**Estate**") of Paula Van Sickle ("**Debtor**"), and moves this Court for an Order authorizing him to employ Coldwell Banker Residential Brokerage and Karren Amidon (collectively, "**Coldwell Banker**") as listing agent for the Estate (the "**Application**"), and respectfully shows this Court as follows:

1. On August 30, 2016 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, initiating Case No. 16-65093-BEM (the "**Case**").

2. On or about the Petition Date, Trustee was appointed to the Case as interim Chapter 7 trustee under 11 U.S.C. § 701(a)(1).

3. The meeting of creditors was held on October 5, 2016, pursuant to 11 U.S.C. § 341(a), and concluded on October 25, 2016, after which time Trustee became the permanent Chapter 7 trustee, under 11 U.S.C. § 702(d).

4. At the commencement of the Case, the Estate was created under 11 U.S.C. § 541(a), and the Estate includes all Debtor's legal or equitable interests in property as of the commencement of the Case and any interest in property that the Estate acquired after commencement of the Case. 11

11746863v1

U.S.C. § 541(a)(1) and (7).

5. Trustee filed his *Application to Appoint Attorney for Trustee* [Doc. No. 17] on February 22, 2017, requesting an order authorizing the appointment of Arnall Golden Gregory LLP as attorneys for Trustee, and on February 23, 2017, the Court entered an order [Doc. No. 18] approving this application.

## The Property

6. On her *Schedule A/B: Property* [Doc. No. 1, page 15 of 49], Debtor scheduled her sole ownership interest in that certain real property known generally as 4938 Montford Court, Duluth, Gwinnett County, Georgia 30096 (the "**Property**").

7. On her *Schedule C: The Property You Claim as Exempt* [Doc. No. 1, page 21 of 49], Debtor claimed an exemption in the Property of $21,500.00 under O.C.G.A. § 44-13-100(a)(1) (the "**Homestead Exemption**").

## Alleged Liens, Interests and Encumbrances

8. On her *Schedule D: Creditors Who Have Claims Secured by Property* [Doc. No. 1, page 23 of 49], Debtor scheduled one (1) claim on or against the Property in the amount of $124,000.00 in favor of Wells Fargo for a "conventional mortgage."

## Request for Authority to Employ Realtor

9. Based on a thorough inspection, evaluation and comparative marketing analysis by a licensed real estate broker, Trustee has determined that the Property should be marketed for sale at a list price of $189,000.00. There appears to be significant equity in the Property that would benefit the Estate if the Property were sold. Trustee has attempted on several occasions to sell the Estate's interest in the Property to Debtor. Trustee's attempts in this regard have been unsuccessful.

10. Accordingly, Trustee requests authority from the Court to employ Coldwell Banker

11746863v1

as his listing agent in the proposed sale of the Property under a listing agreement effective January 19, 2018 through and including April 30, 2018 (the "**Listing Agreement**"), which may be extended if necessary, starting at a list price of $189,000.00, with a six (6%) percent commission of the selling price.  The Listing Agreement is attached hereto, marked as Exhibit "A" and incorporated herein by reference.

11. Any contract for sale of the Property will be subject to Bankruptcy Court approval following the filing of a motion under 11 U.S.C. § 363.

12. The affidavit of Karren Amidon regarding the matters set out in this Application is attached hereto as Exhibit "B" and incorporated herein by reference.

13. Coldwell Banker does not represent any interest adverse to the Estate and is a disinterested person as that term is defined in 11 U.S.C. §101(14).  Coldwell Banker has no current relationship with Trustee or Debtor.

14. The employment of Coldwell Banker as the listing agent to sell the Property pursuant to the terms of the Listing Agreement is in the best interest of the Estate.

WHEREFORE, Trustee prays that this Court grant authority to employ Coldwell Banker as his listing agent to sell the Property pursuant to the Listing Agreement and for such other and further relief as is just and proper.

Respectfully submitted this 19th day of January, 2018.

        ARNALL GOLDEN GREGORY, LLP
        *Attorneys for Trustee*

        By:*/s/ Michael J. Bargar*
          Michael J. Bargar
          Georgia Bar No. 645709
          michael.bargar@agg.com

171 17th Street, N.W.
Suite 2100

11746863v1

Atlanta, Georgia 30363-1031
(404) 873-7030

11746863v1

**EXHIBIT "A" FOLLOWS**

11746863v1



Agent  Karren Amidon
FMLS#
CBRB#  **CBRB16**

# Exclusive Seller Listing Agreement

(ALSO REFERRED TO AS EXCLUSIVE SELLER BROKERAGE AGREEMENT)
State Law requires a Broker representing a Seller as a client to first
enter into a written agreement with Seller under O.C.G.A. § 10-6A-1 et. seq.

For and in consideration of the mutual promises contained herein and other good and valuable consideration, **S. Gregory Hays, Chapter 7 Trustee**, as and only as Trustee for the Estate of Paula Van Sickle(hereinafter referred to as "Seller"), and Coldwell Banker Residential Brokerage (hereinafter referred to as "Broker") do hereby enter into this agreement ("Agreement") on the terms set forth below.

1. **Exclusive Listing Agreement.** Seller hereby grants to Broker the exclusive right and privilege as the agent of Seller to offer for sale during the term of this Agreement the property located at the following address: **4938 Montford Court**, City **Duluth**, **Gwinnett** County, Georgia, Zip Code **30096** the legal description of which is as follows:
*[Select A, B, or C below. Only the sections selected shall be a part of this Agreement.]*

☒ A. Attached as an exhibit hereto;

☐ B. All that tract of land lying and being in land lot _____ of the _____ District, _____ Section of **Gwinnett** County, Georgia and being known as address **4938 Montford Court**; City **Duluth**; County **Gwinnett**; Georgia, Zip Code **30096**, according to the present system of numbering in and around the more particularly described as Lot_____ Block_____ Unit_____ Phase/Section_____ of **Beechwood Hills** Subdivision as recorded in Plat Book_____, Page_____, County **Gwinnett**, Georgia records together with all fixtures, landscaping, and appurtenances, all being hereinafter collectively referred to as the "Property." The full legal description of the Property is the same as is recorded with the Clerk of the Superior Court of the county in which the Property is located and is made a part of this Agreement by reference.

☐ C. Described below if the Property is a condominium unit and a full unit legal description is to be used: Unit _____ of **Beechwood Hills** Condominium ("Condominium"), located in Land Lot _____ of the _____ District of **Gwinnett** County, Georgia, together with its percentage of undivided interest in the common elements of the Condominium, and its interest in the limited common elements assigned to the unit ("Unit"). The Condominium was created pursuant to the Declaration of Condominium for any Condominium ("Declaration"), recorded in Deed Book _____, Page _____, et seq., **Gwinnett** County, Georgia records ("Declaration"), and shown and delineated on the plat of survey filed in Condominium Plat Book _____, Page _____, **Gwinnett** County, Georgia records, and on the floor plans filed in Condominium Floor Plan Book _____, Page _____, **Gwinnett** County, Georgia records.

2. **Term.** The term of this Agreement shall begin on the **19th** day of **January**, 20**18** and shall continue through 11:59 p.m. on the **30th** day of **April**, 20**18** (hereinafter referred to as "Listing Period"). If during the term of this Agreement, Seller enters into a sales contract which does not close for any reason, then the Listing Period shall be automatically extended for the number of days that the Property was under such contract (i.e., the number of days from the date the sales contract went binding until the date it finally is determined that it will not close). This Agreement may be renewed or extended by Broker and Seller, and any such renewals or extensions shall be considered part of the Listing Period.

3. **Independent Contractor Relationships.** This Agreement shall create an independent contractor relationship between Broker and Seller. Broker and its affiliated licensees shall at no time be considered an employee of Seller. Seller acknowledges that the real estate licensees affiliated with Broker are independent contractors and are not Broker's employees.

4. **Broker's Duties to Seller.** Broker's and its affiliated licensees sole duties to Seller shall be to:
    A. Use their best efforts to procure a buyer ready, willing, and able to purchase the Property at a sales price of at least $ **189,000** _____ (which amount includes the Commission in paragraph 5 below) (the "List Price") or any price acceptable to Seller;
    B. Assist to the extent requested by Seller, in negotiating the terms of and filling out a pre-printed real estate purchase and sale agreement; and
    C. Comply with all applicable laws in performing its duties hereunder including the Brokerage Relationships in Real Estate Transaction Act, O.C.G.A. § 10-6A-1 et. seq.



COLDWELL BANKER
RESIDENTIAL BROKERAGE

Agent **Karren Amidon**
FMLS# _____
CBRB# **CBRB16**

*Waived by Broker*
(illegible initials) 1/6/11

**5. Commission.**

    A. Seller agrees to pay Broker a commission of **6.0** percent (%) of the final sales price of the Property plus a $195.00 Broker only commission (collectively, the "Commission") at closing if:

        1. Broker or its affiliated licensees procure a buyer ready, willing, and able buyer to purchase the Property at the List Price or any other price acceptable to Seller;

        2. Seller enters into a contract for the sale or exchange of the Property with any buyer, whether through the efforts of Broker, its affiliated licensees, or any other person, including Seller; or,

        3. Seller refuses, at a time when the Property is not under contract, to accept a bona fide written offer to purchase the Property meeting the following terms and conditions: (a) the net purchase price to be paid in cash or cash equivalent at the closing is at least equal to the List Price, (b) the offer is not contingent upon the buyer selling another property; (c) the offer is not subject to Seller warranties or representations other than: (i) those warranties contained in the Seller's Property Disclosure Statement as acceptable to include in any offer, and (ii) the warranty to convey good and marketable title (which shall have the same meaning set forth in the GAR Purchase and Sale Agreement, Form F20) to the Property at closing by limited warranty deed; and (d) the proposed closing date is no sooner than thirty (30) days nor later than ninety (90) days from the effective date.

Notwithstanding the above, in the event there are multiple offers to purchase the Property, Seller's decision to call for prospective buyers to make their best offer within ten (10) days from the date of the first offer shall not constitute a refusal under subsection 3 above. The term "net purchase price" in subsection 3(a) above shall mean the purchase price after deducting all fees, costs and contributions to be paid by Seller except the Commission and payment of ad valorem property taxes through the date of closing.

    B. Broker shall share the Commission with a cooperating broker, if any, who procures the buyer of the Property by paying such cooperating broker **3.0** percent (%) of the sales price of the Property OR $ **n/a** .

    C. If Seller, during the Protected Period (as that term is defined below), sells or contracts to sell or exchange the Property to any buyer who made an offer on, was introduced to, visited, received information on, inquired about or otherwise learned of the Property during the Listing Period, then Seller shall pay the Commission to Broker at closing. The term "Protected Period" shall mean the ninety (90) day period following the earlier of either: (a) the end of the Listing Period; (b) the date of any termination pursuant to paragraph 20, or (c) the date that the Agreement is terminated upon the mutual, written consent of Broker and Seller. For the purposes of this Agreement, the term "buyer" shall include buyer, all members of the buyer's immediate family, any legal entity in which buyer or any member of buyer's immediate family owns or controls, directly or indirectly, collectively more than 10% of the shares or interests therein, and any trust or third party who is acting for the benefit of or under the direction or control of any of the foregoing parties. Notwithstanding the above, no listing commission shall be paid to Broker if this Agreement has either expired or been terminated upon the mutual, written consent of Broker and Seller and the Property is thereafter sold or contracted to be sold to a prospective buyer by or through another licensed broker with whom Seller has signed an exclusive right to sell listing agreement and Seller pays that broker a commission at least equal to the Commission.

**6. Survival.** Paragraphs 5, 8, 10, 16, 17, 19, and 21 herein shall survive the termination (for any reason) or expiration of this Agreement.

**7. Required State Law Disclosures.**

    A. Broker and its affiliated licensees agree to keep confidential all information that Seller asks to be kept confidential by express request or instruction unless the Seller permits such disclosure by subsequent word or conduct or such disclosure is required by law.

    B. Broker and its affiliated licensees may not knowingly give customers false information.

    C. In the event of a conflict between Broker's and its affiliated licensees duty not to give customers false information and the duty to keep the confidences of Seller, the duty not to give customers false information shall prevail.

    D. Unless specified below, Broker has no other known agency relationships with other parties which would conflict with any interests of Seller (except that Broker may represent other buyers, sellers, landlords, and tenants in buying, selling or leasing property).

**8. No Imputed Knowledge.** Seller acknowledges and agrees that under no circumstances shall there be any knowledge of any facts pertaining to the Seller or the Property imputed to Broker or its affiliated licensees or between the different licensees of Broker. Broker and each of Broker's licensees shall be deemed to have knowledge of only facts of which they have actual knowledge.

**9. Disclosure of Potentially Fraudulent Activities.**

    A. To help prevent fraud in real estate transactions, Seller does hereby give Broker and its affiliated licensees permission to report any suspicious, unusual and/or potentially illegal or fraudulent activity (including but not limited to mortgage fraud) to:

        1. Governmental officials, agencies and/or authorities, and/or

        2. Any mortgage lender, mortgage insurer, mortgage investor and/or title insurance company which could potentially be harmed if the activity was in fact fraudulent or illegal.

    B. Seller acknowledges that Broker and its affiliated licensees do not have special expertise with respect to detecting fraud in real estate transactions. Therefore, Seller acknowledges that:

        1. Activities which are fraudulent or illegal may be undetected by Broker and its affiliated licensees, and

Page 2 of 6

Copyright © 2016 Coldwell Banker Residential Brokerage


Seller's Initials



Agent **Karren Amidon**
FMLS#
CBRB# **CBRB16**

2. Activities which are lawful and/or routine may be reported by Broker and its affiliated licensees as being suspicious, unusual or potentially illegal or fraudulent.

10. **Limits on Broker's Authority and Responsibility.** Seller acknowledges and agrees that Broker and its affiliated licensees:
    A. may show other properties to prospective buyers who have shown interest in the Property;
    B. shall not be responsible to advise Seller on any matter including, but not limited to, the following: any matter which could have been revealed through a survey, title search or inspection of the Property; the condition of the Property or any portion thereof, or any item therein; building products and construction techniques; the necessity or cost of any repairs to the Property; mold; hazardous or toxic materials or substances; termites and other wood destroying organisms; the tax or legal consequences of this transaction; the availability and cost of utilities or community amenities; the appraised or future value of the Property; any condition(s) existing off the Property which may affect the desirability or value of the Property; the terms, conditions and availability of financing; and the uses and zoning of the Property whether permitted or proposed. Seller acknowledges that Broker and its affiliated licensees are not experts with respect to the above matters and agrees that if any of these matters or any other matters are of concern Seller will seek independent expert advice relative thereto. Seller acknowledges that Broker and its affiliated licensees shall not be responsible to monitor or supervise any portion of any construction or repairs to the Property and that such tasks clearly fall outside the scope of real estate brokerage services;
    C. shall owe no duties to Seller nor have any authority to act on behalf of Seller other than what is set forth in this Agreement;
    D. may make all disclosures required by law;
    E. may disclose all information about the Property to others; and
    F. shall be defended, indemnified and held harmless by Seller from any and all claims, causes of action, damages, costs and fees in any way arising out of or relating to:
        1. inaccurate and/or incomplete information provided directly or indirectly by Seller to Broker, its affiliated licensees or to a prospective buyer;
        2. earnest money handled by anyone other than Broker; or
        3. any injury of any nature to persons on the Property or damage of any nature to the Property or anything contained therein.

11. **Broker's Policy on Agency.** Unless Broker indicates below that Broker is not offering a specific agency relationship, the types of agency relationships offered by Broker are: seller agency, buyer agency, designated agency, dual agency, landlord agency, and tenant agency. Broker does not offer sub-agency.

12. **Designated Agency Disclosure.** [Applicable only if Broker's agency policy is to practice designated agency] Seller does hereby consent to Broker acting in a designated agency capacity in transactions in which Broker is representing Seller and a prospective buyer. With designated agency, the Broker assigns one or more of its affiliated licensees exclusively to represent the Seller and one or more of its other affiliated licensees exclusively to represent the prospective buyer.

13. **Seller's Duties.** Seller represents that Seller:
    A. presently has title to the Property and has full authority to enter into this Agreement;
    B. will cooperate with Broker and its affiliated licensees to sell the Property to prospective buyers and will promptly refer all inquiries concerning the sale of the Property to Broker during the term of this Agreement;
    C. will make the Property available for showing at reasonable times as requested by Broker or its affiliated licensees;
    * D. ~~will provide Broker and its affiliated licensees with accurate information regarding the Property (including information concerning all adverse material facts pertaining to the physical condition of the Property); and~~
    E. shall fully comply with all local, state and federal laws.
    * Not Applicable. Seller is a federal bankruptcy trustee who has never seen and has no knowledge of the Property.

14. **Marketing.** See Exhibit "A" - Special Stipulations.
    A. *Advertising / Listing Data*: Broker and its affiliated licensees are authorized to market and advertise the Property for sale in any media of their choosing, including the Internet and multiple listing services ("MLS"), and attempt to procure buyers for the Property in cooperation with other real estate brokers and their affiliated licensees. Except as otherwise provided by applicable law, Seller agrees that Broker shall own and control the listings, descriptions, photographs, and other data or intellectual property gathered, compiled, and aggregated by Broker or its affiliated licensees in connection with its marketing and sale of the Property. Seller acknowledges that in listing the Property in a MLS, all MLS members will have access to Seller's listing information for the purpose of assisting in the sale of the Property. Such images and recordings are not the property of Seller and may not be copied, reproduced or used by Seller or other third parties without the express written permission of Broker or the owner thereof. Seller agrees not to advertise the Property for sale in any media or in any manner except with Broker's prior written consent. Broker is authorized to place Broker's "For Sale" sign on the Property. If the Property is sold or a contract for the sale or exchange of the Property is entered into during the Listing Period, Broker may advertise the Property (including images thereof) in any media of Broker's choosing as being "under contract" while a sale is pending.


Seller's Initials



Agent **Karren Amidon**
FMLS#
CBRB# **CBRB16**

**B.** <u>Multiple Listing Service(s)</u>: Broker will list information about the Property in one or more MLSs, which are electronic databases used by member brokers to identify properties for sale or lease that may interest buyers and tenants and to offer compensation to cooperating brokers. One of the MLSs that Broker may use is the First Multiple Listing Service ("FMLS"), which is owned by various real estate brokerage companies including Broker. In return for services that FMLS provides to Broker, Broker pays various fees to FMLS, including a fee based upon a percentage of the sales price of the Property and a flat fee if the Property is rented. Broker is also a member of FMLS and receives various benefits from FMLS as a result of the membership, financial and otherwise. These benefits include dividend payments that are determined, in part, by the aggregated fees that Broker pays to FMLS. Seller acknowledges that the MLSs are not parties to this Agreement and are not responsible for errors or omissions on the part of Seller or Broker or its affiliated licensees. Seller agrees to indemnify and hold the MLSs (including FMLS) harmless from and against any and all claims, liabilities, damages or losses arising out of or related to the listing and sale of the Property.

**C.** <u>Lockboxes</u>: A lockbox may be used in connection with the marketing of the Property. There have been isolated instances of reported burglaries of homes on which lockboxes have been placed and for which the lockbox has been alleged to have been used to access the home. In order to minimize the risk of misuse of the lockbox, Broker and its affiliated licensees recommend against the use of lockboxes on door handles that can be unscrewed from the outside or on other parts of the home from which the lockbox can be easily removed. If a lock box is used, Seller agrees to remove or secure all valuables.

15. <u>Seller's Property Disclosure Statement.</u> Within three (3) days of the date of this Agreement, Seller shall provide Broker with a current, fully executed Seller's Property Disclosure Statement which Broker and its affiliated licensees are hereby authorized to distribute to prospective buyers. Seller agrees to promptly update any disclosures in writing should any changes occur. Within the same timeframe, Seller shall provide Broker with a completed signed Lead-Based Paint Disclosure if any part of the Property was constructed prior to 1978. *[N/A. NO PROPERTY DISCLOSURE STATEMENT SHALL BE PROVIDED.]* See Exhibit "A" - Special Stipulations.

16. <u>Seller Default.</u> In the event Seller defaults under this Agreement, Seller shall, in addition to the other obligations set forth in this Agreement (including the obligation to pay the Commission), reimburse Broker for the out-of-pocket costs and expenses incurred by Broker and its affiliated licensees in seeking to market and sell the Property. Such costs and expenses shall include, without limitation, printing and copying charges, mileage at the highest rate allowed by the IRS as a business deduction, and expenses to advertise the Property in various media. Seller shall also pay all costs, fees and charges to remove the listing from any MLS. The payment of these costs, fees, charges and expenses by Seller shall not waive or limit Broker's right to assert any other claim, cause of action or suit against the Seller for the Commission and/or other damages. Notwithstanding the above, the amount of such fees, charges, costs and expenses paid by Seller to Broker hereunder shall be an offset against any claim for the Commission.
*[ALL SELLER DEFAULT PROVISIONS SHALL BE SUBJECT TO FURTHER ORDER OF THE BANKRUPTCY COURT.]*

17. <u>Acknowledgements.</u> Broker shall have the right, in its discretion, to increase or decrease the offer of compensation to cooperating brokers and Seller will be notified of any such change; provided, however, that Seller shall not be obligated under this Agreement to pay more than the amounts set forth herein. Georgia law permits a cooperating broker to represent the interests of the buyer even though the seller compensates that broker. Seller and Broker and its affiliated licensees acknowledge that this Agreement does not guarantee a sale. If Broker is acting as escrow agent in a transaction, the funds received ("Deposit") will be deposited in a non-interest bearing account at Wells Fargo Bank ("Bank"), a federally-chartered bank that is insured by the Federal Deposit Insurance Corporation ("FDIC"). FDIC deposit insurance coverage applies to a maximum amount of $250,000 per depositor for deposits held in the same legal ownership category at each bank ("FDIC Limit"). For example, the Deposit will be combined with any individual accounts held directly by Seller at the Bank. Seller is responsible for monitoring the total amount of deposits owned, directly or indirectly, in the Bank. Seller agrees to contact Seller's financial or legal advisors or go to www.fdic.gov/deposit/deposits/index/html if Seller has questions about FDIC deposit insurance. Broker and its affiliated licensees do not guarantee the solvency of any bank into which funds are deposited and shall not be liable for any loss Seller incurs due to the failure, insolvency or suspension of operations of any bank or the FDIC limit. The Property will be offered to any person without regard to race, color, religion, sex, handicap, familial status, national origin, sexual orientation, gender identity, or any other status or class protected by law.

18. <u>Referrals.</u> Seller (i) authorizes Broker and its affiliated licensees to refer Seller to another real estate licensee or broker for brokerage or relocation services not related to the Property, and (ii) acknowledges that Broker and its affiliated licensees may receive a referral fee from that licensee if Seller consummates a real estate transaction with that licensee. If Seller was referred to Broker by another real estate licensee, Broker is paying that licensee a referral fee from its commission.

19. <u>Indemnification.</u> In addition to any other specific indemnification provisions in this Agreement, Seller agrees to ~~defend, indemnify and~~ hold Broker and its affiliated licensees harmless from any and all losses, damages, costs and expenses of any nature, including attorney's fees, and from liability to any person, that Broker or any of its affiliated licensees incur because of (a) Seller's negligence, representations, omissions, actions, or inactions, (b) any loss or theft relating to the use of a lockbox or from Seller's failure to remove or secure valuables, (c) the existence of undisclosed material facts about the Property, (d) the use of any Third Party Vendor referenced under paragraph 21(D), or (e) any damages or losses in any way relating to or arising out of the criminal or negligent acts of third parties.



Agent __Karren Amidon__
FMLS# _____
CBRB# __CBRB16__

20. __Termination.__ Broker shall have the right to terminate this Agreement, with or without cause, upon seven (7) days written notice to Seller. Termination of this Agreement shall not limit Broker's right to collect any commission earned or owed as of the date of or after such termination.

21. __Miscellaneous.__
   A. __GAR Forms.__ The Georgia Association of REALTORS®, Inc. ("GAR") makes certain standard real estate forms available to its members for use in real estate transactions. These GAR forms are frequently provided to the parties in real estate transactions by the REALTORS® with whom they are working. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. Seller agrees that GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.
   B. __Notices.__
      1. __Communications Regarding Real Estate Transactions.__ Seller acknowledges that many communications and notices in real estate transactions are time sensitive and that the failure to be available to receive such notices and communications can have adverse legal, business and financial consequences. During the Listing Period, Seller agrees to remain reasonably available to receive communications and notices from Broker and its affiliated licensees.
      2. __Notices between Broker and Seller Regarding this Agreement.__ Seller, Broker and the affiliated licensee identified below agree that communications and notices between them regarding the terms of this Agreement shall be in writing, signed by the party giving the notice, and may be delivered in person or to that person's address, e-mail address and/or facsimile number specifically set forth in this Agreement.
      3. __Seller Contact Information.__ Seller's contact information is set forth in the signature block of this Agreement.
      4. __Fraudulent Wiring Instructions.__ There have been instances where criminals have hacked email accounts of various parties involved in a real estate transaction (e.g., lawyers, title agents, real estate agents) to send fraudulent wiring instructions to divert funds to the criminal's bank account. These emails may look like legitimate emails form that party. Broker and its affiliated licensees recommend that before Seller wires any funds to any party (including Seller's lawyer, title agent or real estate agent) Seller should personally call them to confirm it is legitimate (i.e., confirm the ABA routing number or SWIFT code and credit account number). Seller should call them at a number personally obtained by Seller (e.g., the sales contract, their website, etc.) and not use the phone number in the email in order to be sure that Seller is contacting a legitimate party.
   C. __Limitation of Liability.__ Broker and its affiliated licensees shall, under no circumstances, have any liability greater than the amount of that real estate commission paid hereunder to Broker (excluding any commission amount paid to a cooperating real estate broker, if any); or, if no real estate commission is paid to Broker, then a sum not to exceed One Hundred Dollars ($100).
   D. __Third Party Vendors.__ As a courtesy, Broker and its affiliated licensees may provide Seller with one or more names of service providers including, but not limited to, home inspectors, engineers, contractors, repairpersons, or attorneys that other consumers have used or of whom Broker or its affiliated licensees are aware and doing so shall not in any way be construed at be a recommendation or endorsement or, nor a warranty of the work of, any such providers. The final choice of any service provider rests solely with Seller and Seller is free to choose any provider, whether or not the name appears on any list.
   E. __Governing Law.__ This Agreement may be signed electronically, via fax and in counterparts and shall be governed by the laws of the State of Georgia.
   F. __Headings.__ The headings in this Agreement are for reference only and may not be a complete description of the terms contained within that provision.
   G. __Entire Agreement.__ This Agreement constitutes the entire agreement between the parties with respect to the Property. No representation, promise or inducement not expressly included in this Agreement shall be binding upon Seller or Broker or its affiliated licensees. This Agreement may not be amended, modified or waived except by written agreement signed by Seller and Broker. The failure of the parties to adhere strictly to the terms and conditions of this Agreement shall not constitute a waiver of the right of the parties later to insist on such strict adherence.

22. __Special Stipulations:__

   1. See attached Exhibit "A"  Special Stipulations
   2. Broker only commission of $195 is waived. KA 1/11/18

23. Seller agrees to immediately notify Broker in writing of any changes to the information contained in this Agreement.





Agent  Karren Amidon
FMLS# _____
CBRB#  CBRB16

RECEIPT OF A COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY SELLER.
The above Agreement is hereby accepted, _____ o'clock _____. m. on the date of
_____.

Seller Name (print) **S. Gregory Hays, Chapter 7 Trustee**, as and only as Trustee for the Estate of Paula Van Sickle Case No. 16-65093-bem

Signature _____  Date 1/12/15

Suite 555, 2964 Peachtree Road

Atlanta, GA 30305
Seller Address for Receiving Notice

(404) 870-5618
Business Telephone

Home Telephone

Cell Phone

Facsimile Number

Pamela.Bicknell@agg.com
E-Mail Address

Seller Name (print)

Signature _____  Date _____

Seller Address for Receiving Notice

Business Telephone

Home Telephone

Cell Phone

Facsimile Number

E-Mail Address

Coldwell Banker Residential Brokerage:

Address: __11035 Medlock Bridge Rd Suite 70__

__Johns Creek, GA 30097__

CBRB16                H-59730
MLS Office Code       Brokerage Firm License Number

Broker's Phone# (770) 623-1900              Fax# (770) 623-1919

By: *Karren Amidon*
Broker or Broker's Affiliated Licensee

Karren Amidon
Print or Type Name

Agent's Georgia Real Estate License Number __298070__    Email Address __atlantahomeshop@gmail.com__

Page 6 of 6
Copyright © 2016 Coldwell Banker Residential Brokerage

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

**COLDWELL BANKER**
RESIDENTIAL BROKERAGE

To: S. Gregory Hays, Chapter 7 Trustee         From: Coldwell Banker Residential Brokerage  Date: 1/11/2018

**Property:** If this form is being provided to you as the seller then this form refers to the property being sold. If this form is being provided to you as a buyer or prospective buyer then this form refers to any property that you may consider purchasing with the assistance of Coldwell Banker Residential Brokerage.

This is to give you notice that Coldwell Banker Residential Brokerage ("Broker"), a subsidiary of Realogy Holdings Corp., is part of the NRT LLC family of real estate brokerage companies and has a business relationship with the companies listed below in this Statement. Realogy Holdings Corp. owns 100% of NRT LLC, which owns 100% of Broker. Realogy Holdings Corp. also owns 100% of each company listed below, except for the mortgage lender, in which either Realogy Services Venture Partner LLC or TRG Venture Partner LLC, each a subsidiary of Realogy Holdings Corp., has a 49.9% ownership interest and the title insurance provider, Regency Title Company, in which Title Resource Group LLC, a subsidiary of Realogy Holdings Corp, has a 50% ownership interest. Realogy Holdings Corp also owns the franchisors of the BETTER HOMES & GARDENS® REAL ESTATE, COLDWELL BANKER®, COLDWELL BANKER COMMERCIAL®, CENTURY 21®, ERA®, AND SOTHEBY'S INTERNATIONAL REALTY® franchise systems. Because of these relationships, Broker's referral of business to any of the companies listed below may provide Broker, Realogy Holdings Corp., NRT LLC, the franchisors owned by Realogy Holdings Corp., and/or their employees, affiliates, or any other related parties noted herein a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed providers as a condition of the purchase or sale of your property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| COMPANIES | SETTLEMENT SERVICES | ESTIMATE OF CHARGES OR RANGE OF CHARGES |
|---|---|---|
| Guaranteed Rate Affinity, LLC<br><br>Provides a full range of residential mortgage loan products and services. | Loan origination charge<br>Loan discount fee/points<br>Application Fee | $1,290<br>0% - 5% of loan amount<br>$0 - $150 |
| PHH HOME LOANS, LLC<br>PHH HOME LOANS, LLC d/b/a SUNBELT LENDING SERVICES<br>PHH HOME LOANS, LLC d/b/a CARTUS HOME LOANS<br>PHH HOME LOANS, LLC d/b/a COLDWELL BANKER HOME LOANS<br><br>Provides a full range of residential mortgage loan products and services. | Loan origination fee<br>Loan discount fee/points<br>Application fee | $0 – $940.00<br>0% – 5% of loan amount<br>$0 - $940.00 (Included in loan origination charge) |
| REGENCY TITLE COMPANY LLC<br>Provides the policy that insures against loss due to certain title defects. | Title commitment (if applicable)<br>Lender's/owner's title insurance | $75<br>$2.50 – $4.50 per thousand ($150 minimum charge) |
| CASTLE EDGE INSURANCE AGENCY, INC.<br>Provides insurance agency services for homeowner's insurance. | Homeowner's Insurance Premium | $2.00 - $6.00 per thousand dollars of replacement cost of dwelling |
| Cartus Corporation<br>Provides relocation, assignment management and cooperative real estate brokerage services to its corporate and government clients and its network of real estate brokerage companies. | Cooperative real estate brokerage commission | The Cartus referral commission varies, but is generally paid to Cartus (a licensed real estate broker) by a real estate broker as a percentage (typically, 37.5% –40%) of the real estate broker's commission on a transaction side, and may be shared by Cartus with other brokers. |
| Other NRT LLC Real Estate Brokerage Companies and Other Franchisees<br>In certain markets other NRT LLC subsidiaries provide real estate brokerage services under Coldwell Banker, Corcoran, CitiHabitats, Sotheby's International Realty, Climb Real Estate, and ZipRealty trade names. Also note that in other markets, franchisees of Realogy Holdings Corp. subsidiaries provide real estate brokerage services as franchisees of Better Homes & Gardens, Coldwell Banker, Coldwell Banker Commercial, Century 21, ERA and Sotheby's International Realty. | Real estate brokerage commission<br>Cooperative real estate brokerage commission | 3 – 10% of sales price of the property depending on multiple factors including type of property, transaction side, services, region and transaction structure. However, commissions vary per agreement with each customer and may be negotiated, in whole or in part, as fixed amounts, such as a fixed amount in lieu of all or part of a percentage, or an amount such as $100 - $1000 in addition to a percentage. In addition, referral commissions vary, but are generally paid by a real estate broker as a percentage (approximately 25% - 50%) of the real estate broker's commission on a transaction side. |

In addition to the affiliated business arrangements described above, Broker has a business arrangement with American Home Shield Corporation ("AHS"). While Broker, Realogy Holdings Corp., and NRT LLC, including their subsidiaries and affiliates, do not have any ownership interest in AHS, they may receive fees from AHS in return for their performance of services.

**ACKNOWLEDGMENT**

I/We have read this disclosure form and understand that Broker is referring me/us to purchase the above-described settlement service(s) and that Broker, Realogy Holdings Corp., NRT LLC, their employees and/or subsidiaries and affiliates may receive a financial or other benefit as the result of this referral.

_____    _____    _____    _____
Buyer or Seller's Signature           Date      Buyer or Seller's Signature           Date

## Exhibit "A"

### Special Stipulations

The following Special Stipulations, if conflicting with any preceding paragraph, shall control:

1. The "Seller" is S. Gregory Hays, as and only as Trustee in Bankruptcy for the Estate of Paula Van Sickle, Chapter 7 Case No. 16-65093-BEM.

2. Seller's Property Disclosure Statement and Georgia Official Wood Infestation Report. **Not applicable. Property to be sold "as is" "where is".**

3. Notwithstanding anything contained in this Agreement to the contrary, the parties acknowledge that the sale of the real property which is the subject of this Agreement and all terms, conditions, warranties and representations contained herein, including Broker's 6% sales commission are subject to approval, and not binding without the approval, of the United States Bankruptcy Court, Northern District of Georgia, Atlanta Division in Case No. 16-65093-BEM in accordance with Title 11 of the United States Code.

4. All parties agree that the closing shall take place no later than fifteen (15) days after the date the Court's Order approving the sale has been entered on the Bankruptcy Court's Docket.

5. The closing attorney shall be such attorney as selected by Seller.

6. Earnest Money shall be at least 2% of Purchase Price.

7. Seller will not make repairs to the property.

8. Seller will not provide a survey. Purchaser shall be responsible for all expenses of the survey, in the event that Purchaser desires to obtain a survey.

9. Trustee and Listing Broker, have no specific knowledge and make no representations concerning the condition of the Property. Buyer understands that the Property is being sold "AS IS".

10. Seller warrants that Seller has title to the Property described herein or will have full authority to enter into this Agreement upon order of the Bankruptcy Court and that any contract for sale of the Property is subject to and contingent upon approval of the U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, in Chapter 7 Case No. 16-65093-BEM, and Seller will execute a Trustee's Deed conveying the Property to Purchaser free and clear of all liens, interests and encumbrances.

_____
Seller

_____
Agent

11518126v1

**EXHIBIT "B" FOLLOWS**

11746863v1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 16-65093-BEM |
| | ) | |
| PAULA VAN SICKLE, | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |

**REAL ESTATE BROKER'S VERIFIED STATEMENT PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2014 AND 5002**

The undersigned hereby declares under penalty of perjury:

1. I am a licensed real estate agent in the State of Georgia and am affiliated with Coldwell Banker Residential Brokerage ("**Coldwell Banker**"), with offices located at 11035 Medlock Bridge Road, Suite 70, Johns Creek, Georgia 30097. Coldwell Banker's Brokerage Firm License Number is H-59730.

2. Coldwell Banker has been asked to represent Neil C. Gordon, as Chapter 7 Trustee for the bankruptcy case of Paula Van Sickle ("**Debtor**"), in the value evaluation and sale of that certain real property known generally as 4938 Montford Court, Duluth, Gwinnett County 30096 (the "**Property**").

3. Coldwell Banker is experienced at providing opinions as to the valuation and at handling the sales of real property in the State of Georgia.

4. Coldwell Banker is to be compensated for its services as a real estate broker at 6% of the selling price of the Property, subject to Court approval after notice and hearing, which notice and hearing may be provided with the notice of the relevant sale of the Property.

5. Except as set forth herein, neither I nor Coldwell Banker has a connection within the scope of Bankruptcy Rule 2014 with Debtor, the creditors, or any party in interest in this bankruptcy case, or any attorney or accountant thereof.

11518073v1

6. Neither I nor Coldwell Banker are related to or have any connection within the scope of Bankruptcy Rules 2014 or 5002 with any Judge of the United States Bankruptcy Court, Northern District of Georgia. Moreover, neither I nor Coldwell Banker are related to or have any connection within the scope of Bankruptcy Rules 2014 or 5002 with any attorney, employee, or agent of the Office of the United States Trustee.

7. To the best of my knowledge, information, and belief, Coldwell Banker and I are disinterested persons as that term is defined under 11 U.S.C. § 101(14).

Dated this 11th day of January, 2018.

                                                    */s/ Karren Amidon*
Karren Amidon, Licensed Real Estate Agent
Georgia Real Estate License No. 298070

11518073v1

## CERTIFICATE OF SERVICE

This is to certify that I have mailed a copy of the foregoing **APPLICATION TO EMPLOY REAL ESTATE AGENT UNDER LISTING AGREEMENT** by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery to:

Office of the U.S. Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA  30303

S. Gregory Hays
Chapter 7 Trustee
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

Karren Amidon
Coldwell Banker Residential Brokerage
11035 Medlock Bridge Road
Suite 70
Johns Creek, GA 30097

M. Denise Dotson
M. Denise Dotson, LLC
Post Office Box 435
Avondale Estates, GA 30003

Paula Van Sickle
4938 Montford Court
Duluth, GA 30096

This 19th day of January, 2018.

*/s/ Michael J. Bargar*
Michael J. Bargar
Ga. Bar No. 645709

11746863v1